IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CORNELIUS JOHNSON,            :

    Petitioner,                :

vs.                           :     CA 06-0623-CG-C

ALBERTO GONZALES, et al.,     :

    Respondents.

**REPORT AND RECOMMENDATION**

Cornelius Johnson, a native and citizen of Jamaica ordered removed from the United States and presently being detained by the Immigration and Customs Enforcement ("ICE") arm of the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1]  This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without

---

[1] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Streiff, is hereby substituted for Robert Gaines as a proper respondent in this case.

prejudice to being filed at a later date, because Johnson prematurely filed the present attack upon his post-removal-period detention.

**FINDINGS OF FACT**

1. Johnson is a native and citizen of Jamaica who entered the United States on March 6, 1993 as a lawful permanent resident. (Doc. 11, Exhibit 1, Declaration of Dennis E. Rau, Jr., at ¶ 3)

2. On December 4, 1997, petitioner entered a guilty plea to criminal possession of marijuana in the fourth-degree, a Class A misdemeanor, in the Erie County Superior Court, Buffalo, New York, and was sentenced to a conditional discharge and a fine of $500.00. (Doc. 11, Exhibit A to Rau declar.)

3. The Immigration and Naturalization Service ("INS") placed Johnson into removal proceedings by the issuance of a Notice to Appear dated August 12, 1999. (Doc. 11, Exhibit B to Rau declar.) Petitioner was notified that his 1997 conviction made him deportable. (*See id.*)

4. Johnson first came into the custody of the INS on January 24, 2001, at the Erie County Holding Center (Doc. 11, Rau declar. at ¶ 6 & Exhibit C); he was released on bond from the Federal Detention Facility in Batavia, New York on March 13, 2001 (*id.*).

5. On December 11, 2002, United States Immigration Judge Philip J. Montante, Jr., ordered petitioner removed from the United States to his native Jamaica. (Doc. 11, Exhibit D to Rau declar.) The order reveals that Johnson withdrew his application for voluntary departure. (*Id.*) "Resp. is either ineligible or has abandoned any & all relief." (*Id.*)

6. Johnson timely appealed the Immigration Judge's December 11, 2002 decision to the Board of Immigration Appeals inasmuch as, on April 16, 2004, the BIA entered a *per curiam* order affirming, without opinion, the results of the immigration judge's decision. (*See* Doc. 11, Exhibit E to Rau declar.) "The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4)." (*Id.*)

7. "Subsequent to the BIA decision petitioner was detained by ICE/DHS on July 9, 2004, and placed into custody." (Doc. 1, at 5 ¶ 6) On July 29, 2004, Johnson's attorney, Stephen K. Tillis, Esquire, filed an application for a stay of deportation or removal with the INS. (Doc. 11, Exhibit F to Rau declar.)

> Applicant seeks stay of deportation during pendency of motion to vacate conviction, filed on July 28, 2004, in New York State Supreme Court, County of Erie. Applicant is deportable for conviction of Criminal possession of Marijuana, 4th degree, an "A" misdemeanor, sustained on December 4, 1997, before Hon. John Rogowski. The transcript and record of

> the proceedings demonstrate that significant mistakes of fact and in law caused the applicant to accept a plea which was involuntary and unknowing, contrary to his constitutional rights as a criminal defendant. There is a strong likelihood that the motion to vacate will be granted and applicant will retain his status as a lawful permanent resident.

(*Id.*) On August 3, 2004, William M. Cleary, a Field Office Director with ICE, denied the request for stay of deportation. (*See id.*) "The reasons cited on the submitted stay application form as to why Mr. Johnson should not be deported from the United States to Jamaica have been noted, however, none of these reasons are included among the specific criteria by which the District Director may consider a stay of removal under either Title 8 Code of Federal Regulations, Section 212.5, or Section 241(c) of the Immigration and Nationality Act." (*Id.*)[2]

      8.      On August 9, 2004, petitioner, through Stephen K. Tillis, Esquire, filed a petition for writ of habeas corpus and for stay of deportation,

---

[2] Between the time petitioner was taken into ICE custody on July 9, 2004 and the time petitioner's motion for stay of deportation was administratively denied on August 3, 2004, a deportation officer with ICE, Allen Wood, requested the Jamaican Embassy to facilitate a travel document for Johnson's deportation on **"August 2, 2004**." (Doc. 11, Exhibit G to Rau declar. (emphasis supplied)) Thereafter, on August 4, 2004, petitioner was served with a Warning for Failure to Depart. (*See id.*, Warning for Failure to Depart) "Your willful failure to depart the United States on **08-02-04** renders you amenable to prosecution under 8 USC 1253(a), and, pursuant to 241(a)(1)(C) of the INA, makes you ineligible for a future review of your custody status." (*Id.* (emphasis supplied)) This documentation reveals that Johnson was decidedly not scheduled for deportation on August 4, 2004, as represented by Rau in his declaration. (*Compare id. with* Rau declar. at ¶ 11)

pursuant to 28 U.S.C. § 2241, in the United States District Court for the Western District of New York and contended therein that "his criminal conviction was not final for deportation purposes and that a motion to vacate such conviction was pending in the State court." (Doc. 1, at 6 ¶ 9; *see also* Doc. 11, Exhibit 4, at ¶ 14 ("Having moved to vacate the plea, the conviction which resulted from the plea should not be considered a 'final conviction' for immigration purposes."))[3] One week later, on August 16, 2004, United States District Judge William M. Skretny entered a decision and order staying petitioner's removal or deportation pending disposition of his § 2241 habeas proceeding. (Doc. 11, Exhibit H to Rau declar.) "Respondents may, during the pendency of this proceeding in this Court, move to lift the stay of removal or deportation." (*Id.*)

9.      By letter dated October 7, 2004, Johnson was notified that a review of his file had been undertaken by ICE and a decision made to continue his detention. (Doc. 11, Exhibit I to Rau declar.)

10.     On March 25, 2005, the Board of Immigration denied Johnson's

---

[3] With respect to petitioner's state-court proceeding, on August 9, 2005, Associate Justice Jerome C. Gorski, with the Appellate Division, Fourth Judicial Department of the Supreme Court of New York, granted Johnson permission to appeal from the "order of County Court entered in the Office of the Clerk of the County of Erie on January 31, 2005," on the basis that there were questions of law or fact that needed to be reviewed by the appellate court. (Doc. 1, Exhibit B)

motion to reopen proceedings. (Doc. 11, Exhibit J to Rau declar.)

> The motion to reopen has been filed out of time and will be denied. The final order in these proceedings was entered by the Board on April 16, 2004. Pursuant to 8 C.F.R. § 1003.2(c)(2) (with certain exceptions not pertinent here), a motion to reopen in any case previously the subject of a final decision by the Board must be filed no later than 90 days after the date of that decision. In the instant case, a motion to reopen would have been due on or before July 15, 2004. The record reflects, however, that the Board did not receive the motion until February 28, 2005. The motion to reopen was therefore filed out of time. Accordingly, the motion to reopen is denied. The request for a stay is also denied.

(*Id.*)

11.    On June 23, 2005, Johnson's § 2241 petition filed in the Western District of New York was "transferred in its entirety to the Second Circuit Court[] of Appeal[s] as a petition for review pursuant to the Real ID Act[.]" (Doc. 1, at 6 ¶ 11; *see also* Doc. 11, Exhibit 5 ("WHEREAS, pursuant to the REAL ID Act § 106(a), the exclusive means of review of an administrative order of removal, deportation, or exclusion is a petition for review to the appropriate court of appeals, and WHEREAS, pursuant to the REAL ID Act § 106(c), the District Court 'shall transfer' all cases filed before May 11, 2005, 'or the part of the case that challenges the order of removal, deportation, or exclusion' to the appropriate court of appeals, and WHEREAS, petitioner challenges an administrative order or removal which was the result of

immigration proceedings completed within this Circuit, and WHEREAS, the petition was filed before May 11, 2005, **IT IS ORDERED** that the instant petition is hereby transferred to the Second Circuit Court of Appeals and to the extent that the District Court has entered a stay of removal, said stay remains in place until further notice from the Court of Appeals."); *see* Doc. 11, Exhibit K to Rau declar. ("Presently, you have a petition pending before the Second Circuit Court of Appeals, which has resulted in a stay of removal being granted."))[4]

12.     By letter dated October 13, 2005, Johnson was notified that a review of his file had been undertaken by ICE and another decision made to continue his detention. (Doc. 11, Exhibit K to Rau declar.)

13.     On May 22, 2006, the Board of Immigration Appeals issued a *per curiam* order denying Johnson's April 26, 2006 motion to reopen and reconsider. (*See* Doc. 11, Exhibit L to Rau declar.)

        To the extent the respondent's motion is to be considered

---

[4]     Johnson avers in the complaint filed in this Court that he "currently has a stay of deportation in the Second Circuit Court." (Doc. 1, at 6 ¶ 13; *see also* Doc. 1, Exhibit C, OCTOBER 25, 2005 Order from the Second Circuit Court of Appeals ("IT IS HEREBY ORDERED that petitioner's motion for a stay of removal pending determination of the petition for review is GRANTED in accordance with the government's response dated October 6, 2005[.]"); *see* Doc. 1, at 3 ¶ 1 ("[Petitioner] has since filed a petition for review with the U.S. Court[] of Appeal[s] for the Second Circuit, of which is still pending, his case number is 05-0911[;] he also has a Stay of Deportation.") )

a second motion to reopen, we consider the regulations provide that motions to reopen shall be limited to one motion to reopen, with certain exceptions not pertinent here. *See* 8 C.F.R. § 1003.2(c)(2). The motion to reopen is therefore barred by numerical limitations, and will therefore be denied. Moreover, pursuant to 8 C.F.R. § 1003.2(c)(2), a motion to reopen in any case previously the subject of a final decision by the Board must be filed no later than 90 days after the date of that decision, or on or before September 30, 1996, whichever is later. The final order in these proceedings was entered by the Board on April 16, 2004. Therefore, in the instant case, a motion to reopen would have been due on or before July 15, 2004. The record reflects the respondent's second motion was filed on April 26, 2006. Therefore, the motion to reopen was also filed out of time, and not properly before us for consideration.

Notwithstanding, even if it had been timely filed, the motion would be denied. A motion to reopen is not a substitute for an appeal. It is not to be used as an opportunity for a second effort at proving factual allegations or presenting alternate legal arguments. *See Matter of Guevara*, 20 I&N Dec. 238 (BIA 1991); *see also Matter of Cerna*, 20 I&N Dec. 399 (BIA 1991). The Board's decision as to such issues is final. To hold otherwise would invite repeated piecemeal reopening and would render immigration litigation virtually interminable, contrary to the strong public interest in finality of immigration litigation once the parties have had an opportunity to develop their cases. *INS v. Abudu*, 485 U.S. 94, 107-108 (1988); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992).

To the extent the respondent's motion is to be considered a motion to reconsider, it is untimely filed. Pursuant to 8 C.F.R. § 1003.2(b)(2), a motion to reconsider in any case previously the subject of a final decision by the Board must be filed no later than 30 days after the date of that decision, or on or before September 30, 1996, whichever is later. The final order in these proceedings was entered by the Board on April 16, 2004. Therefore, in the instant case, a motion to reconsider would have

>been due on or before May 17, 2004. The record reflects the respondent's motion to reconsider was filed on April 26, 2006. Therefore, the motion to reconsider was also filed out of time, and is not properly before us for consideration.

(*Id.*)

14. By letter dated October 12, 2006, Johnson was notified that a review of his file had been undertaken by ICE and yet another decision made to continue his detention. (Doc. 11, Exhibit M to Rau declar.)

15. On October 4, 2006, Johnson filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in this Court seeking his immediate release from custody. (*See* Doc. 1) "Petitioner her[e]by submit[s] his Habeas petition challenging his unlawful detention in light of the fact that [h]is plea of guilt is not final for deportation purposes and is being reviewed by an appellate court; he seeks release from custody pending his New York State appeal[;] he currently has a stay of deportation in the Second Circuit Court." (Doc. 1, at 6 ¶ 13; *see also* Doc. 12, Petitioner's Response to the Government's Answer, at 3 ("The government ha[s] presented cases that are not applicable at bar, because petitioner is not challenging none of the issues raised in the cases submitted, but is challenging that his criminal conviction is not final for deportation purposes, and that his continued detention is unlawful."); Doc. 13, Affidavit in Support of Motion Seeking Temporary Restraining Order and

Immediate Release, at 1 ("Johnson who is currently detained by ICE challenges in his habeas corpus petition that his continued detention is illegal and unlawful, in that his conviction is not final for deportation, he seeks release from custody, he further declared in his response to the government's answer that the warrant of removal that was used to detain him was invalid and void, because he was detained before his filing period expired, while out on bond; ICE violated his due process [rights] and his right to liberty."))

## CONCLUSIONS OF LAW

1. In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2. The Supreme Court held in *Zadvydas* that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3. 8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)  Detention, release, and removal of aliens ordered removed**

**(1)  Removal period**

**(A)  In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B)  Beginning of period**

The removal period begins on the **latest** of the following:

**(i)**  The date the order of removal becomes administratively final.

**(ii)**  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)**  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C)  Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or

> other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> **(2)  Detention**
>
> During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And

for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

    4.    In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court

13

in granting such motion. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

5. In this case, Johnson has filed his § 2241 petition prematurely. Petitioner's filing date in this instant action, October 4, 2006 (Doc. 1), came just shy of one year after the Second Circuit Court of Appeals issued its order granting Johnson's stay of removal pending determination of the petition for review.[5] Therefore, in accordance with *Zadvydas* and *Akinwale*, Johnson has had no period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as presumptively reasonable by the Supreme Court. In other words, the six-month

---

[5] As indicated above, Johnson filed a § 2241 petition in the Western District in New York on August 9, 2004 and therein requested a stay of deportation; the stay was granted by the district court on August 16, 2004. On June 23, 2005, the district court transferred Johnson's § 2241 petition to the Second Circuit Court of Appeals.

period has not yet begun, much less expired; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.[6]

## CONCLUSION

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Cornelius Johnson's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Johnson's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future, and in the appropriate court, when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections

---

[6] While petitioner makes the argument that he should be immediately released from detention, it is his apparent contention that though he cites to *Zadvydas* in his complaint he is not relying on that case but, instead, is contending that his release is somehow mandated because the 1997 criminal conviction upon which his deportation is based "is not final for deportation purposes[]" (Doc. 12, at 1 & 3; *see also* Doc. 1, at 6) and the warrant of removal used to detain him was invalid and void since he was detained "before his filing period expired, while out on bond[.]" (Doc. 13, Affidavit)  The problem with petitioner's primary argument is that just because he contends his 1997 criminal conviction is not final for deportation purposes does not make that argument something which this Court need give credence to since no court has made this determination. Petitioner is attacking his 1997 conviction in a New York state appellate court and, depending upon the determination in that case, will make argument to the Second Circuit Court of Appeals about how the state-court decision impacts the administrative removal decision made in his case that is pending before the Second Circuit on a petition for review. This Court has no jurisdiction to weigh-in on the issue of whether Johnson's 1997 criminal conviction is "final for deportation purposes" and, therefore, has no basis to release petitioner from detention. In addition, this Court has no reason to make any determination regarding whether the administrative warrant of removal was valid or invalid; that is an issue that should have been raised in the first instance administratively and then on appeal to the Second Circuit Court of Appeals.

to the report and recommendation of the Magistrate Judge.

**DONE** this the 27th day of April, 2007.

<u>s/WILLIAM E. CASSADY</u>
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE